# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***100 Roberts Road Business Condominium Ass'n v. Khalaf*, 2013 IL App (1st) 120461**

---

| | |
|---|---|
| Appellate Court Caption | 100 ROBERTS ROAD BUSINESS CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. VICTORIA KHALAF and STANLEY HORN, Defendants (Judd Azulay, Glenn Seiden and All Unknown Occupants, Defendants-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-0461 |
| Filed | September 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a forcible entry and detainer action arising from defendants' failure to pay common assessments for a business condominium, where the trial court initially entered judgment for plaintiffs but reduced the damages due to the finding that plaintiff failed to mitigate its damages, but upon reconsideration found that defendants waived their right to argue mitigation and dismissed the case on the ground that plaintiff brought the action for an improper purpose, the appellate court reversed the trial court's ultimate ruling and remanded the cause for entry of a judgment in plaintiff's favor for the assessments due, without deduction for the failure to mitigate damages, and costs and attorney fees, since plaintiff had no duty to mitigate damages under the relevant statutory provisions, and under the circumstances here, where the collection of past-due assessments, and not possession, was at issue, the defense of improper motive would not be expanded beyond a retaliatory eviction context. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-M3-4333; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Patrick E. Dwyer III, of Law Office of Patrick E. Dwyer III, of Chicago, for appellant.

Alan J. Mandel, of Alan J. Mandel, Ltd., of Skokie, for appellees.

Panel

PRESIDING JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    On November 24, 2010, plaintiff 100 Roberts Road Business Condominium Association filed a forcible entry and detainer lawsuit against defendants Victoria Khalaf, Stanley Horn, Judd Azulay, Glenn Seiden and all unknown occupants, claiming that defendants had failed to pay the common assessments due for a business condominium since 2004.

¶ 2    On July 28, 2011, following a bench trial, the trial court entered a judgment for the plaintiff for past-due assessments against defendants Judd Azulay and Glenn Seiden. However, the trial court reduced plaintiff's damage award based on its finding that plaintiff had failed to mitigate its damages.

¶ 3    Plaintiff filed a motion to reconsider, claiming that it was inappropriate to reduce plaintiff's award based on its alleged failure to mitigate damages. On plaintiff's motion for rehearing the trial court granted plaintiff's motion to reconsider, finding that defendants had waived their right to argue mitigation based on the declaration of condominium owners. However, the court then made a finding that plaintiff had brought the forcible entry and detainer lawsuit for an improper purpose and dismissed the case against defendants. Plaintiff appealed. For the reasons that follow, we reverse the judgment of the circuit court and remand with directions for further proceedings.

¶ 4                                Background

¶ 5    The 100 Roberts Road Condominium building consists of a three-unit building in Palos Heights, Illinois. The first unit, 10001, is owned by a land trust, with the named beneficiary being John C. Griffin. Unit 10001 is occupied by the law firm Griffin and Gallagher, LLC. Unit 10003 is owned by Omer Abuzir and is occupied by the law firm Abuzir & Mitchell, which is associated with Victoria Khalaf. Unit 10005, the unit at issue in this lawsuit, is titled to Victoria Khalaf, Stanley Horn, Glenn Seiden and Judd Azulay, but has been vacant for a number of years. Unit 10005 is encumbered with a mortgage signed by Victoria Khalaf, Stanley Horn, Glenn Seiden and Judd Azulay.

¶ 6	The 100 Roberts Road Business Condominium Association, plaintiff, consists of three members: Victoria Khalaf, Omer Abuzir and John C. Griffin. Pursuant to the declaration of condominium ownership, plaintiff has a duty to maintain the common areas of the building, estimate the costs associated with maintaining the common areas and collect assessments from the unit owners to cover the costs of such maintenance.

¶ 7	Defendants, owners of unit 10005, have not paid common assessments since 2004, with the exception of $2,000, which was paid by a Daniel Azulay in 2007.

¶ 8	On June 11, 2010, plaintiff filed a claim for a lien with the Cook County recorder of deeds in the amount of the unpaid assessments, $12,910, and mailed the lien to defendants on August 25, 2010. The notice of lien indicated that plaintiff had retained the law firm Fullest Rosenlund Anderson P.C. to file a lawsuit and collect the amounts owed in assessments, if necessary.

¶ 9	On September 23, 2010, plaintiff caused a notice and demand for possession to be served on all defendants. When there was no response within the statutory period, plaintiff filed a forcible entry and detainer lawsuit against defendants on November 24, 2010. In the lawsuit, plaintiff sought possession, unpaid assessments, and the payment of costs, late charges, interest and reasonable attorney fees.

¶ 10	On June 15, 2011, default judgments were entered against Khalaf and Horn. The default judgments were never vacated and they are not parties to this appeal. On July 6, 2011, Azulay and Seiden appeared and filed an answer with a general denial of all allegations.

¶ 11	The trial commenced on July 6, 2011, proceeding against Azulay and Seiden. There was no court reporter at the trial. However, in its January 12, 2012 memorandum order, the trial court recited the facts elicited at trial, which we in turn recite below.

¶ 12	Plaintiff's first witness, Noreen McInerny, an attorney for Griffin and Gallagher, LLC, testified that her firm acts as the attorney and property manager for plaintiff and also rents space from plaintiff. She testified that the property at issue, unit 10005, is vacant. The warranty deed dated September 2003 states that the owners of unit 10005 are Victoria Khalaf, Stanley Horn, Judd Azulay and Glenn Seiden. She testified that with respect to this litigation, she prepared and filed the notice of liens and sent copies to defendants; she prepared the demand for possession and sent copies to defendants; and she filed the complaint on November 24, 2010.

¶ 13	McInerny further testified that prior to the weeks leading up to trial, she had never seen Azulay or Seiden, and she had never received any checks from either of them. She testified that the current directors of the association are Khalaf, Abuzir and Griffin and that Abuzir and Khalaf are in a business relationship. She testified that the sign on the door of Abuzir's unit states "Horn, Khalaf, Abuzir & Mitchell."

¶ 14	Next, plaintiff called Mary Corr, the bookkeeper at Griffin and Gallagher, LLC, who testified that the association pays the insurance, garbage, fire alarm system and landscaping for the building. She testified that unit 10005 owes $16,282.15 in assessments and that since May 2004, she had only received three checks for assessments, totaling $2,000. She further testified that when she began doing the book work at Griffin and Gallagher, LLC, in 2006, unit 10005 was vacant and was $5,000 in arrears. She was aware that unit 10005 had not paid

assessments in years, but she did not do anything about it. At some point, she was directed to send notices to Daniel Azulay. She sent several late notices to Daniel Azulay, but did not send him any claims for possession.

¶ 15    Defendants called defendant Seiden as a witness. He testified that he had recently learned that he was an owner of unit 10005. He stated that he was never told he was a joint owner, but acknowledged that his signature was on the mortgage. He testified that he had known Horn for many years. Seiden and Horn had been in the practice of law together and Seiden had entered into about a dozen small investments with Horn. In 2005, arrangements were made to have Horn dissociate from Seiden's firm. Ultimately, a lawsuit was filed to effectuate the dissociation. That litigation is still pending.

¶ 16    In 2006 or 2007, Seiden felt that Khalaf was not fully accounting for the income she was bringing in at the firm, and Seiden asked her to take some time off. Khalaf never returned to the firm. Seiden testified that Daniel Azulay was the brother of Judd Azulay and they formerly had a law practice together. When Seiden joined their law firm, Daniel Azulay retained an interest in the firm, but left the firm shortly thereafter. There had been bad feelings between the Azulay brothers and Seiden encouraged the separation.

¶ 17    Following the trial, defendants requested an opportunity to respond to the issue of title. After this issue was briefed, the trial court ruled in favor of plaintiff and awarded unpaid assessments, but reduced the award in two manners. First, the court deducted from the award the amount of assessments already paid, $2,000. Second, the court only allowed plaintiff to recover unpaid assessments from 2010 to the present because the court found that plaintiff had failed to mitigate its damages.

¶ 18    Plaintiff filed a motion to reconsider, which was fully briefed. The trial court granted plaintiff's motion to reconsider finding that articles XV and XVII of the declaration of condominium ownership effectively waived defendants' right to argue mitigation as a defense. However, the trial court ultimately dismissed the case, ruling in favor of defendants, finding that plaintiff had filed the lawsuit for an improper purpose. Specifically, the court found:

"There is strong direct and circumstantial evidence in this case which leads the court to believe that the motivation for the suit against Azulay and Seiden was for reasons other than the collection of past due assessments. It appears that Azulay and Seiden were passive investors in a venture orchestrated by Horn. According to the evidence, at the time of the filing of this case, Horn and Seiden were and continued to be involved in litigation. Per Seiden's testimony it appears that in 2006 or 2007 Khalaf left his law firm under a cloud. It appears by the sign on the door that Abuzir, Horn and Khalaf are associated in the practice of law. The evidence produced leads to the conclusion that 10005 Roberts Road was never occupied. Khalaf along with Abuzir directed the lawyers to file suit against Khalaf, Horn, Azulay and Seiden. The attorneys who filed this case were given an improper address at which to serve Horn according to the affidavit of the special process server. Even though Khalaf and Horn have never appeared, their attorneys waited four months to have a default judgment entered against them. Furthermore, at no time have Khalaf or Horn petitioned the court to vacate the default

-4-

judgment against them."

¶ 19 On February 8, 2012, plaintiff appealed the trial court's July 28, 2011 order and January 12, 2012 order.

¶ 20 On appeal, plaintiff contends this case must be remanded to the trial court because: (1) "improper motive" is not an affirmative defense under Illinois condominium law, (2) mitigation is not an affirmative defense under Illinois condominium law, and (3) defendants forfeited both affirmative defenses, improper motive and mitigation, because they failed to plead them.

¶ 21                                    ANALYSIS

¶ 22 Sections 9(g)(1) and 9(h) of the Condominium Property Act (the Condominium Act) provide that if a unit owner fails to make timely payments for common expenses, the amount due shall constitute a lien on the interest of the unit owner in the property, which may be foreclosed upon by the board of managers of the condominium association. See 765 ILCS 605/9(g)(1), (h) (West 2008). Section 9.2 of the Condominium Act allows a board of managers to bring a lawsuit pursuant to the Forcible Entry and Detainer Act (735 ILCS 5/art. IX (West 2008)) to collect unpaid assessments. See 765 ILCS 605/9.2(a) (West 2008). Conversely, section 9-102(a)(7) of the Forcible Entry and Detainer Act gives the board of managers of a condominium association the authority to maintain a forcible entry and detainer action as a means to obtain unpaid assessments:

"(a) The person entitled to the possession of lands or tenements may be restored thereto under any of the following circumstances:

* * *

(7) When any property is subject to the provisions of the Condominium Property Act, the owner of a unit fails or refuses to pay when due his or her proportionate share of the common expenses of such property, or of any other expenses lawfully agreed upon or any unpaid fine, the Board of Managers or its agents have served the demand set forth in Section 9-104.1 of this Article in the manner provided for in that Section and the unit owner has failed to pay the amount claimed within the time prescribed in the demand ***." 735 ILCS 5/9-102(a)(7) (West 2008).

Further, the Forcible Entry and Detainer Act states "when the action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and judgment in favor of the plaintiff shall be entered for the possession thereof and for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs." 735 ILCS 5/9-111(a) (West 2008).

¶ 23 In this case, there is no dispute that plaintiff properly brought this action seeking payment for unpaid assessments under the Forcible Entry and Detainer Act.

¶ 24    At the outset, we note that there was no transcript memorializing the trial proceedings and no proper bystander report certified for review on appeal. Ordinarily, the absence of a record would require us to uphold the trial court's findings. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("appellant has the burden to present a sufficiently complete record *** to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis"). However, in this case, the trial court included in its January 12, 2012 memorandum order a detailed statement of facts summarizing the testimony of each witness who testified at trial. As such, we have a sufficient basis in the record to consider the merits of this appeal.

## Failure to Plead Affirmative Defenses

¶ 26    Plaintiff argues that because defendants did not plead the affirmative defenses of mitigation and improper purpose, defendants should have been barred from presenting evidence of those issues at trial. The decision whether to allow evidence at trial lies within the sound discretion of the trial court and will not be overturned unless there is an abuse of that discretion. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1027-28 (2006). In the trial court's factual findings, it was clear that evidence regarding improper motive and mitigation was presented at trial without any noted objection by the parties. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant and in favor of the judgment below. *Foutch*, 99 Ill. 2d at 392. Based upon the record before us, we have no evidence that plaintiff objected to this testimony at trial and, therefore, find plaintiff has waived the right to raise the issue on appeal. See *Gaston v. Founders Insurance Co.*, 365 Ill. App. 3d 303, 311 (2006) (generally, issues raised for the first time on appeal are waived).

¶ 27    Further, Supreme Court Rule 181(b)(2) provides "[i]n actions for forcible detainer (see Rule 101(b)), the defendant must appear at the time and place specified in the summons. If the defendant appears, he or she need not file an answer unless ordered by the court; and when no answer is ordered, the allegations of the complaint will be deemed denied, and any defense may be proved as if it were specifically pleaded." Ill. S. Ct. R. 181(b)(2) (eff. Feb. 10, 2006). Given there is no indication in the record that defendants were ordered to file an answer, it appears that evidence in support of these defenses was also properly presented at trial pursuant to Supreme Court Rule 181(b)(2). Finding that it was proper for defendants to present evidence of improper motive and mitigation at trial, we must now determine whether these defenses were germane to plaintiff's forcible entry and detainer action.

## Improper Motive Defense

¶ 29    Plaintiff argues that in filing a forcible entry and detainer lawsuit against defendants for unpaid assessments, improper motive was not germane to this action pursuant to the Forcible Entry and Detainer Act and, therefore, could not legally serve as a defense to the claims made in the lawsuit. Where we must ascertain the meaning of a statute, our review is *de novo*. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 454 (2002).

¶ 30    An action under the Forcible Entry and Detainer Act "is a special statutory proceeding,

summary in its nature, in derogation of the common law, and a party seeking this remedy must comply with the requirements of the statute." (Internal quotation marks omitted.) *Eddy v. Kerr*, 96 Ill. App. 3d 680, 681 (1981). A statute in derogation of the common law cannot be construed as changing the common law beyond what the statutory language expresses or is necessarily implied from what is expressed. *Williams v. Manchester*, 228 Ill. 2d 404, 419 (2008). In construing such a statute, a court will not presume that the legislature intended an innovation of the common law further than that which the statutory language specifies or clearly implies. *Id.* Indeed, " 'statutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication.' " *Id.* (quoting *Summers v. Summers*, 40 Ill. 2d 338, 342 (1968)).

¶ 31       When entertaining forcible entry and detainer actions, the court "has limited and special jurisdiction without equitable powers." *Newport Condominium Ass'n v. Talman Home Federal Savings & Loan Ass'n of Chicago*, 188 Ill. App. 3d 1054, 1058 (1988). A forcible entry and detainer proceeding is a summary statutory proceeding to adjudicate possession rights and should not be burdened by matters unrelated to the issue of possession. *Bismarck Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167, 174 (1980).

¶ 32       The forcible entry and detainer statute provides that "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise. However, a claim for rent may be joined in the complaint, and judgment may be entered for the amount of rent found due." 735 ILCS 5/9-106 (West 2008). Accordingly, only matters germane to the distinctive purpose of a forcible entry claim may be introduced by the defendant through affirmative defenses, counterclaims or otherwise. *American National Bank v. Powell*, 293 Ill. App. 3d 1033, 1044 (1997); *Oak Park Trust & Savings Bank v. Village of Mount Prospect*, 181 Ill. App. 3d 10 (1989). Our supreme court has defined "germane" as "closely allied, *** closely related, closely connected." (Internal quotation marks omitted.) *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 256 (1970).

¶ 33       Here, the parties have made it clear throughout the record that possession is not at issue; the only matter at issue in plaintiff's forcible entry and detainer action is the payment of unpaid assessments.[1]

¶ 34       "Where a claim seeks damages and not possession, [damages to defendant] is not germane to the distinct purposes of the forcible entry and detainer proceeding." *Sawyier v. Young*, 198 Ill. App. 3d 1047, 1053 (1990); *Great American Federal Savings & Loan Ass'n v. Grivas*, 137 Ill. App. 3d 267 (1985); *Bismarck Hotel Co. v. Sutherland*, 92 Ill. App. 3d 167 (1980); *Reid v. Arceneaux*, 63 Ill. App. 2d 113 (1965). Damages sought by the defendant must be tied to the issue of possession. *Spanish Court Two Condominium Ass'n v. Carlson*,

---

[1]When possession is at issue, courts have found the following issues to be germane in forcible entry and detainer actions: "(1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; or (4) claims questioning the plaintiff's motivation for bringing the action." *American National*, 293 Ill. App. 3d at 1044. Because possession is not at issue, these do not apply in this case.

2012 IL App (2d) 110473, ¶ 33 ("where possession is not contested, the defendant may not seek damages at all"). Given that possession is not at issue here, we cannot find that plaintiff's improper motive was germane to the distinctive purpose of plaintiff's forcible entry and detainer claim.

¶ 35    In *Reid*, the plaintiffs filed a forcible entry action to regain possession of a building on the basis that the defendant was in default under articles of agreement of the warranty deed. *Reid*, 63 Ill. App. 2d at 114. Defendant chose not to contest possession but instead counterclaimed that the plaintiffs had committed fraud and misrepresentation by inducing the purchase of the property. *Id.* at 116. The court in *Reid* found that since the defendant's counterclaim did not dispute possession but rather sought relief other than possession, its defenses of fraud and misrepresentation were not germane to the distinctive purpose of the forcible entry and detainer proceedings. *Id.*

¶ 36    Similarly, in *Sawyier*, the court found that the issue of possession was conceded by the defendant and, therefore, was not a part of the proceeding. *Sawyier*, 198 Ill. App. 3d at 1053. As such, the court held that a defense challenging possession was not germane and could not be presented in the forcible entry and detainer action. *Id.* at 1053-54.

¶ 37    In this case, possession was no longer an issue at trial and the distinctive issue to be decided in plaintiff's claim is whether defendants owe plaintiff unpaid assessments. Defendants have not cited any cases where improper motive has encompassed a factual scenario like the one before this court. In the cases cited by defendants where improper motive has been held to be a valid defense, possession was an issue and the improper motive has been equated with retaliatory eviction, *i.e.*, cases where landlords have attempted to evict tenants from their homes due to complaints the tenants have made regarding the conditions of their homes and noncompliance with government ordinances or due to their refusal to pay rent until their complaints concerning the condition of the premises are addressed. See *American National*, 293 Ill. App. 3d 1033; *People ex rel. Department of Transportation v. Walliser*, 258 Ill App. 3d 782 (1994); *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351 (1972). In such cases, there is a clear public policy underlying the defense of retaliatory eviction. *Clore v. Fredman*, 59 Ill. 2d 20, 26 (1974) ("The public policy of this State as evidenced by its statutory law forbids a landlord to terminate or refuse to renew a lease because a tenant complained to a governmental authority of a *bona fide* violation of any applicable building code, health ordinance or similar regulation.").

¶ 38    Defendants here do not claim plaintiff filed this case in retaliation because they complained about the condition of the property. We find no public policy argument applicable in this case where the improper motive alleged is bad feelings between the parties. Defendants have not cited any authority finding that the defense of improper motive in the context of a forcible entry and detainer action has been expanded beyond retaliatory eviction. We are not persuaded that the existence of a dispute between the owners of a condominium is a valid defense to a forcible entry and detainer action filed to collect past-due assessments. We decline to expand the defense of improper motive beyond the public policy considerations in the cited cases to include the factual allegations made in this case.

¶ 39    Furthermore, the factual basis of any improper motive in this case has not been fully

-8-

developed. It is unclear what the exact improper motive is alleged to be for filing this lawsuit, and up to now, any improper motive appears to be based upon speculation.

¶ 40     We appreciate that there is obvious conflict between these parties and appreciate the trial court's observations in that respect. However, we simply can find no authority and no persuasive reason to expand the meaning of improper motive beyond retaliatory eviction. As such, we must reverse the trial court's order and remand the cause for further proceedings consistent with this opinion.

¶ 41                                        Mitigation Defense

¶ 42     Initially, we note that the trial court, in its order granting rehearing and entering judgment in favor of the defendants, found that mitigation is not a proper defense in this case. Defendants did not file a cross-appeal to contest this initial finding. Accordingly, we find we do not have jurisdiction to consider defendants' claim that mitigation is a proper defense in this case. *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.*, 222 Ill. App. 3d 413, 421 (1991); Ill. S. Ct. R. 303 (eff. May 30, 2008).

¶ 43     Assuming *arguendo* this issue had been properly preserved, defendants' claim that mitigation is a proper defense is without merit and would fail. Where we must ascertain the meaning of a statute, our review is *de novo*. *Knolls Condominium Ass'n*, 202 Ill. 2d at 454.

¶ 44     As stated earlier, an action raised under the Forcible Entry and Detainer Act "is a special statutory proceeding, summary in its nature, in derogation of the common law, and a party seeking this remedy must comply with the requirements of the statute." (Internal quotation marks omitted.) *Eddy*, 96 Ill. App. 3d at 681. A statute in derogation of the common law cannot be construed as changing the common law beyond what the statutory language expresses or is necessarily implied from what is expressed. *Williams*, 228 Ill. 2d at 419. In construing such a statute, a court will not presume that the legislature intended an innovation of the common law further than that which the statutory language specifies or clearly implies. *Id.* Indeed, "statutes in derogation of common law are to be strictly construed and nothing is to be read into such statutes by intendment or implication." (Internal quotation marks omitted.) *Id.* (quoting *Summers*, 40 Ill. 2d at 342).

¶ 45     While defendants suggest that because mitigation is required in landlord-tenant actions pursuant to section 9-213.1 (735 ILCS 5/9-213.1 (West 2008)), it should be required in this case, the duty of mitigation found in the landlord-tenant statute has never been extended to cases dealing with condominium associations and unit owners. See 735 ILCS 5/9-213.1 (West 2008) ("a landlord or his or her agent shall take reasonable measures to mitigate the damages recoverable against a defaulting lessee"); *St. George Chicago, Inc. v. George J. Murges & Associates, Ltd.*, 296 Ill. App. 3d 285, 290-91 (1998) (stating section 9-213.1 was created to "require landlords to make reasonable efforts to relet the premises following a tenant's departure, rather than allowing the premises to stand vacant and the landlord to collect rent in the form of damages").

¶ 46     Rather, contrary to the language in section 9-213.1 pertaining to landlords and tenants, section 9-111.1 of the Forcible Entry and Detainer Act specifically lays out that a condominium association has the right, but not the obligation, to rent out the unit upon an

entry of judgment in its favor. 735 ILCS 5/9-111.1 (West 2008) ("the board of managers shall have the right and authority, incidental to the right of possession of a unit under the judgment, but not the obligation, to lease the unit to a bona fide tenant"). As such, we find it evident from the language of the Forcible Entry and Detainer Act relating to condominium associations' remedies that plaintiff had no duty to mitigate damages in this case.

¶ 47     For the above reasons, we reverse the trial court's order and remand the cause directing the circuit court to enter judgment for the plaintiff in the amount of the assessments due without deduction for the claimed failure to mitigate damages, and costs and reasonable attorney fees.

¶ 48     Reversed and remanded with directions.